IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLEVIEW TECHNOLOGIES, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> NEARMAP US, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS <br><br><br> Case No. 2:21-CV-283-TS-DAO <br><br> District Judge Ted Stewart |

EagleView Technologies, Inc. sues Nearmap US, Inc. for infringement of patents related to modeling and measuring roofs using aerial photographs. Nearmap moves to dismiss two claims on the basis that the patents at issue are invalid under 35 U.S.C. § 101. For the reasons below, the court will deny the motion.

## I. BACKGROUND

The relevant facts in the complaint are taken as true for purposes of this motion.

Plaintiff EagleView Technologies, Inc. ("EagleView") was the earliest provider of remote aerial roof measurement services. Before EagleView's inventions, repairing or replacing a roof required an onsite visit to determine the style of roof, take measurements, and inspect the area for access and cleanup before preparing a written estimate. EagleView's patents describe methods for estimating roofs without manual measurement. The patents claim computer-implemented tools that rely on unconventional correlations of aerial images from different angles, resulting in more efficient and accurate estimates than conventional, manual procedures. A wide range of customers in construction, insurance, solar energy, and other industries uses EagleView's technologies to estimate roofing costs.

1

Defendant Nearmap US, Inc. ("Nearmap") provides aerial imagery and geospatial tools, directly competing with EagleView in the construction, insurance, and solar markets. The complaint alleges that Nearmap infringed eight patents owned by EagleView and a related entity, but this motion challenges only two: U.S. Patents Nos. 8,209,152 (the "'152 Patent") and 9,135,737 (the "'737 Patent"), which share a title and specification.

Representative Claim 10 of the '152 Patent depends from Claim 1, which recites:

> **A computer-implemented method for generating a roof estimate report, the method comprising:**
>
> **displaying a first and a second aerial image of a building having a roof, each of the aerial images providing a different view of the roof of the building;**
>
> **receiving an indication of a feature of the building shown in the first aerial image;**
>
> **modifying a three-dimensional model of the roof based on the received indication of the feature of the building; and**
>
> **displaying a projection of the feature from the modified three-dimensional model onto the first and second aerial images as a line drawing of the feature, each overlaid on corresponding locations of the feature on the first and second aerial images.**[1]

Claim 10 adds the following limitations:

> **The method of claim 1 further comprising:**
>
> **displaying a marker operable to specify a point on an image;**
>
> **receiving, via the marker, an indication of a point on the first aerial image; and**
>
> **registering, based on the received indication of the point, the aerial image to a reference grid corresponding to the three-dimensional model.**[2]

Representative Claim 1 of the '737 Patent recites:

> **A computer-implemented method in a roof estimate report system including at least one processor and a memory coupled to the at least one processor, the method comprising:**

---

[1] Compl. Ex. 1, Docket No. 2-2 at 45.

[2] *Id.*

> **displaying, by the at least one processor of the roof estimate report system, a plurality of aerial images of a roof at the same time, each of the aerial images providing a different view, taken from a different angle of the same roof;**
>
> **displaying, by the at least one processor of the roof estimate report system, respective line drawings representing features of the roof, the respective line drawings overlying a first and a second aerial image of the plurality of aerial images of the roof, the line drawing overlying the first aerial image of the roof having features in common with the line drawing overlying the second aerial image of the roof;**
>
> **in response to user input, changing, by the at least one processor of the roof estimate report system, the line drawing representing a feature of the roof that overlies the first aerial image of the roof;**
>
> **in response to the changing, making corresponding changes, by the at least one processor of the roof estimate report system, to the line drawing overlying the second aerial image; and**
>
> **generating and outputting a roof estimate report using a report generation engine, wherein the roof estimate report includes numerical values for corresponding slope, area, or lengths of edges of at least some of a plurality of planar roof sections of the roof, wherein the generated roof estimate report is provided for repair and/or constructing the roof structure of the building.**[3]

On May 4, 2021, EagleView and a related entity brought this infringement action against Nearmap. On July 8, 2021, Nearmap moved to dismiss the claims related to the '152 and '787 Patents. The motion is fully briefed and the court heard oral argument on November 8, 2021.

## II. STANDARD FOR MOTION TO DISMISS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does

---

[3] Compl. Ex. 5, Docket No. 2-6 at 48.

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6] "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[7] In making this determination, the court accepts all well-pleaded factual allegations and views the complaint in the light most favorable to the non-moving party.[8]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[9] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[10] The court may also consider other "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[11]

The Federal Circuit has emphasized that subject matter eligibility under § 101 is a question of law based on underlying facts that may be decided on a Rule 12(b)(6) motion where there are no facts which, taken in the light most favorable to the plaintiff, prevent resolving the question as a matter of law.[12]

---

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[7] *Id.* at 679 (internal citations and quotation marks omitted).

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[9] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[10] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[11] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[12] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

### III. DISCUSSION

Nearmap moves to dismiss EagleView's claims for infringement of the '152 and '737 Patents. Nearmap argues that the patents are invalid under 35 U.S.C. § 101 because they are directed to unpatentable abstract ideas. Because Nearmap fails to show ineligibility as a matter of law, its motion will be denied.

Under § 101 of the Patent Act, patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[13] The Supreme Court has interpreted this statement as containing implicit exceptions: "'Laws of nature, natural phenomena, and abstract ideas are not patentable.'"[14] The primary concern of these exemptions is preemption: claims that are "not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work'" are ineligible for patent protection.[15]

The Supreme Court has articulated a two-step test for identifying non-patentable subject matter.[16] At Step One, the court asks whether the patent claims are "directed to" an ineligible concept, such as an abstract idea, a law of nature, or a natural phenomenon.[17] If not, the inquiry ends. If so, the court asks at Step Two whether the claims nevertheless contain an "'inventive

---

[13] 35 U.S.C. § 101.

[14] *Alice Corp. Pty. Ltd. v. SLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

[15] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 216).

[16] *Alice*, 573 U.S. 208; *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012).

[17] *Alice*, 573 U.S. at 217.

concept'" that is "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"[18]

Nearmap argues that the '152 and '737 Patents fail Step One because they are directed to abstract ideas such as "collecting and analyzing information,"[19] "overlaying a roof outline onto aerial images,"[20] "determining roof measurement information,"[21] "collect[ing] and present[ing] information based on the outline of the shape of a roof,"[22] "gathering information about buildings from aerial images,"[23] and registering points on images to three-dimensional grids.[24]

Determining what a patent is "directed to" is not an exact science.[25] A court must assess a claim's "character as a whole" in light of the specification[26] to determine its "focus"[27] or "'basic thrust,'"[28] but without oversimplifying claims or describing them "[at] a high level of abstraction

---

[18] *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (alteration in original).

[19] Mot. at 8, Docket No. 40 at 13.

[20] Mot. at 9, Docket No. 40 at 14.

[21] Mot. at 17, Docket No. 40 at 22.

[22] Mot. at 1, Docket No. 40 at 6.

[23] Mot. at 2, Docket No. 40 at 7.

[24] Mot. at 7–8, Docket No. 40 at 12–13.

[25] *See generally Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1376–79 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part) (discussing the difficulties in determining what a patent is "directed to" under Supreme Court and Federal Circuit precedent).

[26] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

[27] *Id.* at 1336.

[28] *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016)).

and untethered from the language of the claims."[29] It is unclear just how a court is to perform this delicate feat.[30]

Whatever the focus of the patent claims at issue, Nearmap has not convinced the court that it is an abstract idea. The representative claims recite specific computerized steps using specific inputs and outputs to achieve specific goals in roof modeling technology. Thus, although the claims *involve* abstract concepts like using aerial images to gather and process information about roofs, overlaying outlines onto images, and registering points on images to three-dimensional grids, they do not appear "directed to" these concepts.[31]

The court views these claims as analogous to the claim in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, which recited a method for automation of aspects of the animation process. The Federal Circuit rejected the argument that the claim was "directed to" an abstract idea, explaining

---

[29] *Enfish*, 822 F.3d at 1337; *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294–96 (Fed. Cir. 2020) (rejecting characterization of claim as directed to abstract idea where arriving at that characterization required disregarding important elements of the claims); *McRO*, 837 F.3d at 1313 ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.") (internal quotation marks and citation omitted); *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013) (*"*[A]ny claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims."), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 573 U.S. 942 (2014).

[30] *See generally Smart Sys.*, 873 F.3d at 1376–79 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part).

[31] *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018) ("At *Alice* step one, it is not enough to merely identify a patent-ineligible concept underlying the claim; we must determine whether that patent-ineligible concept is what the claim is 'directed to.'") (internal quotation marks and citation omitted); *Enfish*, 822 F.3d at 1335 ("The 'directed to' inquiry . . . cannot simply ask whether the claims *involve* a patent-ineligible concept."); *see also Alice*, 573 U.S. at 217 ("At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.") (internal quotation marks and citations omitted); *Parker v. Flook*, 437 U.S. 584, 594 (1978) (explaining that a process was not unpatentable simply because it contained patent-ineligible components, but because the process, "*considered as a whole*, contains no patentable invention") (emphasis added).

7

that this was not a case "where the claimed computer-automated process and the prior method were carried out in the same way."[32] The court explained:

> While the rules are embodied in computer software that is processed by general-purpose computers, Defendants provided no evidence that the process previously used by animators is the same as the process required by the claims. . . . [There is] no suggestion that animators were previously employing the type of rules required by claim 1. . . . The computer here is employed to perform *a distinct process* to automate a task previously performed by humans.[33]

In other words, the claim in *McRO* did not describe the idea of automated animation using a computer. Rather, it described an *improved method* in animation.[34]

Nearmap has not meaningfully distinguished this case from *McRO*. As in *McRO*, EagleView claims distinct processes that are entirely different from the methods humans previously used to model or measure roofs by hand. At this stage of the litigation, the court interprets these patents as "directed to" those specific improved methods, not any known method or other abstract idea that might be related or involved. Put another way, Nearmap has not shown that the '152 and '737 Patents risk appropriating any basic building blocks of scientific or technological work, which is the fundamental concern of § 101.

Because Nearmap has not shown that EagleView's patents fail Step One of the § 101 analysis, the court will deny its motion without proceeding to Step Two. The court makes no ruling on the ultimate eligibility of the patents and the denial of the motion is without prejudice.

---

[32] *McRO*, 837 F.3d at 1314–15 (citing *Alice*, 573 U.S. at 220; *Bilski v. Kappos*, 561 U.S. 593, 611 (2010); *Parker*, 437 U.S. at 585–86).

[33] *Id.* at 1314 (emphasis added).

[34] *Compare McRO*, 837 F.3d 1299, *with Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366–69 (Fed. Cir. 2019) (explaining that method claim automating pen-and-paper methods for collecting, analyzing, manipulating, and displaying data from bedside machines at healthcare facilities was directed to an abstract idea).

It is therefore

ORDERED that Nearmap's Motion to Dismiss (Docket No. 40) is denied.

DATED this 15th day of November, 2021.

                                        BY THE COURT:

                                        Ted Stewart
                                        United States District Judge