Juliette P. White, USB #9616
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES INC., PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> NEARMAP US, INC., <br><br> Defendant. | **PLAINTIFFS' REPLY TO NEARMAP'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, THEIR MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASES** <br><br> REDACTED VERSION <br><br> Case No. 2:21-cv-00283-TS-DAO <br><br> The Honorable Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................................1

II.     ARGUMENT.........................................................................................................................3

        A.      EagleView Timely Moved To Amend.....................................................................3

        B.      Uniting EagleView's Claims In A Single Case Is The Most Efficient Way To
                Proceed....................................................................................................................6

        C.      EagleView Is Not "Circumventing" The Court's Prior Denial Of
                Consolidation. ........................................................................................................9

        D.      EagleView's Amendment Is Not Futile. ...............................................................10

III.    CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. PAR Elec. Contractors, Inc.*,
   318 F.R.D. 640 (D. Kan. 2017)...............................................................................................8

*Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
   No. SACV 09-0834, 2010 WL 1462110 (C.D. Cal. April 12, 2010) .......................................8

*Federal Insurance Co. v. Gates Learjet Corp.*,
   823 F.2d 383 (10th Cir. 1987) ................................................................................................5

*Hom v. Squire*,
   81 F.3d 969 (10th Cir. 1996) ..................................................................................................5

*WiAV Networks, LLC v. Hewlett-Packard Co.*,
   No. C 10-03448, 2010 WL 11484493 (N.D. Cal. Dec. 17, 2010)............................................6

*Zisumbo v. Ogden Reg'l Med. Ctr.*,
   801 F.3d 1185 (10th Cir. 2015) ..............................................................................................3

**Federal Statutes**

35 U.S.C. § 299...........................................................................................................................10

EagleView submits this reply in further support of its Motion for Leave to File an

Amended Complaint or, in the Alternative, to Consolidate Cases (Dkt. 155) ("Motion") and in

response to Nearmap's opposition (Dkt. 175).

## I.      INTRODUCTION

EagleView should be granted leave to file an amended complaint, or alternatively, this

case should be consolidated with the *GAF* Case.[1]  Remarkably, Nearmap cries prejudice when it

is EagleView who is prejudiced by the theft of trade secrets and additional patent infringement,

which it newly discovered through this litigation.  The record shows EagleView timely moved

for leave to amend after discovery of the relevant facts, and well within the time allowed by the

scheduling orders in this case.  In fact, EagleView's motion for leave was timely even before the

Court's recent extensions to the case schedule.  Dkt. 99 at 2 (prior scheduling order setting a

November 18, 2022 deadline).  The deadline to amend is set near the end of discovery for a

reason, as it is well understood discovery may reveal additional misconduct necessitating

amendment of the pleadings in a complex case like this.  Nearmap has not shown that it would

be unduly prejudiced by the amendment.  Although the impact on this case would be significant,

that is a direct result of Nearmap's infringement and theft, and its efforts to conceal the same.

Moreover, any purported prejudice resulting from trying the additional claims in this case as

opposed to one or more subsequent case(s) is outweighed by the efficiency gains.  In

complaining of prejudice, Nearmap fails to acknowledge the alternative reality—i.e., the

---

[1] *Eagle View Technologies, Inc. v. GAF Materials LLC*, Case No. 2:22-cv-00215, also pending
before this Court.

unavoidable burden on this Court, EagleView, and Nearmap if forced to try multiple cases serially.

EagleView's patent infringement claims against QuickMeasure reports and the software used to create them should all be disposed of in a single case. Currently, those claims are fragmented across two cases against two different defendants. By its Motion, EagleView seeks to unite its QuickMeasure-related claims in a single action and thus avoid the inefficiencies of serial, piecemeal litigation.

EagleView's claims against Nearmap should also be disposed of in a single case. EagleView learned of these claims *because* of this case—namely, through the extensive documents Nearmap produced in this case, which Nearmap continues to produce and EagleView continues to review—and that just further proves that they are related to the claims that are already pending. Importantly, unless the Protective Order is amended, it could complicate EagleView's ability to use the material it learned in this case in another case. Again, it is more efficient to litigate these claims against Nearmap in a single case, rather than require EagleView to file a separate action.

Nearmap's additional arguments also fail. EagleView is not attempting to "circumvent" the Court's prior order denying pretrial consolidation of the *Nearmap* and *GAF* Cases, which was decided based on limited and plainly incorrect facts—again, facts that were squarely in Nearmap's and GAF's possession, but not EagleView's or this Court's. Based on the current record, which shows that Nearmap's and GAF's infringement arise from a single series of transactions or events, complete consolidation is appropriate. And Nearmap's cursory and

2

inaccurate arguments relating to EagleView's identification of trade secrets and eligibility of the patents under § 101 make clear that amendment is not futile.

For all of the reasons set forth in its briefing, EagleView's Motion should be granted.

## II.      ARGUMENT

### A.      EagleView Timely Moved To Amend.

As explained, EagleView has only recently unraveled the truth behind Nearmap's and GAF's roles with respect to QuickMeasure reports.  Mot. at 3-6.  And it was also discovery produced in this case that tipped EagleView off to Nearmap's theft of trade secrets and further patent infringement.  Moreover, EagleView still does not have full discovery on Nearmap's accused ▮ product—Nearmap's production of documents is ongoing even today. EagleView also does not have full discovery on all products that perform similarly to the Accused Products.  In October 2022, EagleView was forced to file a motion to compel (Dkt. 111), which is still pending, because Nearmap continues to resist providing discovery on the full scope of accused products.  In other words, to the extent additional products exist that are similar in functionality to the Accused Products but that Nearmap refuses to produce without a court order, discovery will be delayed yet again (like it was with EagleView's discovery of ▮ ).

EagleView timely moved to amend.  The relevant question is whether there has been *undue* delay—there plainly has not.  Denial of leave to amend is appropriate only "when the party filing the motion has no adequate explanation for the delay;" allegations of purported "lateness" do not "justify denying an amendment." *Zisumbo v. Ogden Reg'l Med. Ctr.*, 801 F.3d 1185, 1195 (10th Cir. 2015).  EagleView's explanation—that discovery is ongoing and new facts are continually emerging—is more than adequate.  Notably, the parties have consistently agreed

that the deadline to amend pleadings falls *after* the close of fact discovery (*e.g.*, Dkt. 56) for good reason, as it is obvious discovery might reveal evidence supporting additional causes of action or other grounds for amendment in a case like this. Nearmap's implied argument that EagleView should have iteratively petitioned the Court for leave to amend at the exact moment each new claim crystalized is both inaccurate and practically absurd.

Nearmap's arguments that EagleView has long been in possession of the relevant information should be rejected. First, EagleView is not "in possession" of Nearmap's source code. EagleView is able to *inspect* it, during business hours, upon coordinating the dates with Nearmap. Moreover, importantly, Nearmap's interrogatory responses a month after its purported January 2022 source code production ███████████████████████████████████ ██████████████████████. Ex. J (2/18/2022 Interrogatory Responses) at 8-10. By condemning EagleView for not appreciating ███████████████████████████ █████████████████████████████████—Nearmap is effectively arguing that EagleView should have caught Nearmap *sooner*.

Second, Nearmap argues that documents EagleView relies on were produced in May 2022. But that does not mean EagleView was able to instantly review and appreciate Nearmap's substantial production. Nor was Nearmap's production complete in May 2022. Rather, discovery is an ongoing process, and in the course of that process, EagleView learned of its new claims. Upon learning of new information, EagleView worked diligently to evaluate its new claims and prepare a lengthy amended complaint.

Third, Nearmap argues that EagleView relies on public documents for some of the new patents. But there is no requirement that EagleView cite all of its evidence in a complaint.

EagleView's infringement assertion is based on Nearmap's confidential documents produced in discovery, even if they are not cited.  Thus, this is not a claim that EagleView reasonably could have brought at the inception of this case.

Moreover, Nearmap points to no requirement that EagleView was required to serially amend its complaint as it learned about each new piece of evidence.  Discovery is not complete, and, just last week, Nearmap produced more relevant and directly responsive information about ███████ and finally produced a SkyMeasure report, ████████████████████████ ███████████.  Indeed, recent and voluminous productions continue to shed light on EagleView's amendments.  *See* Decl. of Aaron Morris ¶¶ 5-7.   That the initial hint of certain claims may have come earlier than others does not mean that EagleView unduly delayed in bringing its proposed amendment.  EagleView has an obligation to investigate and confirm that there is a good faith basis for bringing any claim, and did so in this case before seeking leave to amend.

Nearmap's cases are distinguishable.  Unlike *Federal Insurance Co. v. Gates Learjet Corp.*, 823 F.2d 383 (10th Cir. 1987), EagleView did not have "documents from which it could have discovered and asserted the [claims]" at the time the lawsuit was filed.  To the contrary, the operation of Nearmap's products is confidential, and ████████████████████████ ████████████████████████████████.  *See* Mot. at 5-6.  And unlike *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996), where the plaintiff sought to amend two years after the deadline for amending pleadings and two months before trial, EagleView's Motion was filed before the deadline, and no trial date has been set in this case.

Because EagleView acted timely and diligently, the undue delay factor does not warrant denial of its Motion.

**B.**      **Uniting EagleView's Claims In A Single Case Is The Most Efficient Way To Proceed.**

The effect of EagleView's proposed amendment on this case is greatly outweighed by the inefficiency and complexity of the alternative.  Adding EagleView's new claims and GAF as a party here is manageable.  The Court can, for example, set new case deadlines for the parties to exchange contentions on the newly added patents and allow claim construction to proceed on a single track rather than piecemeal.[2]  *See WiAV Networks, LLC v. Hewlett-Packard Co.*, No. C 10-03448, 2010 WL 11484493, at *4 (N.D. Cal. Dec. 17, 2010) (finding changes to the schedule would not "create prejudice sufficient to deny leave to amend").  In fact, under a new, unified schedule, GAF's contention exchanges can occur at the same time as Nearmap's exchanges on newly asserted patents, after which all of EagleView's claims will be in sync.

These exchanges would not be prejudicial or constitute duplicative work, since Nearmap would have to serve such contentions regardless of whether EagleView brings these claims in this case or a new case.  In contrast, the amount of duplication and fragmented litigation that would result from keeping the *Nearmap* and *GAF* Cases separate, and requiring EagleView to bring its additional claims against Nearmap in yet a third proceeding, is untenable.  *See also* Mot. at 9-11.  For example:

- the Court would have to hold multiple claim construction hearings on the same or similar patents and construe those patents multiple times,

---

[2] Nearmap has also previously expressed concerns that this litigation is "casting a cloud on Nearmap's legitimate business in the U.S."  Dkt. 89 at 7.  Bringing all claims in one action—which will be disposed of sooner than serially filed litigations—would bring a swifter resolution to Nearmap.  Not to mention, Nearmap itself sought to expand the scope of this case by adding a patent misuse defense, which would have engendered delay and an expansion of discovery.

6

- the parties would have to take duplicative depositions in multiple proceedings (e.g., deposing a corporate representative for GAF in the Nearmap case and then again in the GAF case),

- the parties would have to subpoena the same third parties on similar issues in multiple proceedings,

- the parties would have to exchange multiple rounds of expert reports on overlapping issues, and take multiple duplicative expert depositions,

- the Court would have to entertain multiple rounds of summary judgment motions on the same or similar issues,

- the Court would have to hold two separate trials on the same QuickMeasure product, and

- the Court would have to hold two separate trials on Nearmap.

Throughout those stages, similar factual and legal questions on issues such as invalidity and infringement would be litigated repeatedly. Not to mention, litigation of substantive issues might be complicated by satellite litigation about whether the Court's prior rulings on an issue have preclusive effect or operate as law of the case and how they limit or inform arguments in the next round of litigation. For example, would the Court's claim constructions in the *Nearmap* Case bind EagleView, even though EagleView will not have the benefit of GAF's positions at the time claim construction is argued? Can GAF re-argue a non-infringement position even if the same argument is already presented by Nearmap?

Nearmap's arguments fail to account for this highly inefficient alternative scenario and thus do not show that Nearmap would be unduly prejudiced by EagleView's amendment. Nearmap complains of additional work that it would have to do to defend against new patents (Opp. at 3-4), but if done in this case, Nearmap can reap the benefits of the overlap between the new and existing claims. For example, instead of taking brand new depositions in a new case, Nearmap could take supplemental depositions, if necessary, to cover any additional areas newly

7

implicated by EagleView's new claims.  As another example, Nearmap can serve a single expert

report that comprehensively addresses the technology and asserted patents, instead of two

repetitive reports that address different subsets of patents.

Contrary to Nearmap's characterization, there is no work that needs to be "*re*done."  No

one is asking Nearmap, for example, to re-serve invalidity or non-infringement contentions on

patents currently asserted.  The fact that Nearmap must respond to contentions "on new products

and new patents" (Opp. at 3) is nothing more than the work of "defending a lawsuit."  *Aten Int'l*

*Co., Ltd. v. Emine Tech. Co., Ltd.*, No. SACV 09-0834, 2010 WL 1462110, at *4 (C.D. Cal.

April 12, 2010).  ***Nearmap will either have to do this work in a new case, or in the current***

***case***.  Thus, having to do that work certainly "doesn't rise to the level of prejudice required to

prohibit [EagleView] from amending [its] complaint."  *Id.*  In fact, courts "frequently" allow new

patents to be added to existing lawsuits.  *Id.* (collecting cases).

Thus, Nearmap's complaints do not show ***undue*** prejudice that would warrant denial of

EagleView's Motion.  *See Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 645 (D.

Kan. 2017) ("While any amendment invariably causes some practical prejudice, undue prejudice

means that the amendment would work an injustice to the defendants." (internal quotations

omitted)).  In fact, permitting EagleView's amendment would be a more just outcome for

Nearmap, and minimizes the inefficiency and burden on the parties and the Court.[3]

---

[3] To the extent Nearmap is unhappy that it has already taken some depositions of witnesses
relevant to EagleView's new claims, that is partly a problem of Nearmap's making.  The parties
recently briefed multiple motions relating to the case schedule and deposition scheduling.  At the
start of those discussions, EagleView informed Nearmap of its intent to seek leave to amend the
complaint and proposed an interim postponement of depositions.  Dkt. 123-9 at 2 (10/12/2022

## C.      EagleView Is Not "Circumventing" The Court's Prior Denial Of Consolidation.

Again, EagleView only gradually uncovered the intersectionality between the *Nearmap* and *GAF* Cases—intersectionality always known by Nearmap and GAF. Mot. at 3-6. When EagleView previously moved for pretrial consolidation, the request was based on overlapping patents and efficiency gains from coordinating schedules and proceedings like claim construction. *See* Dkt. 60. EagleView did not know then that part of its infringement claims arose out of the same series of transactions or events. Now, finally, EagleView and the Court have a fuller picture. EagleView is not trying to circumvent the Court's prior ruling, nor is it seeking reconsideration. Rather, EagleView is asking for different relief—leave to amend, or alternatively complete consolidation—on different facts.[4]

The prior consolidation motion had no impact on EagleView's ability to accuse Nearmap of infringement based on ████. That EagleView has supplemented its infringement contentions, and now seeks to amend its complaint, to specifically identify ████ is not cabined by this Court's prior ruling on consolidation.

Nearmap's argument about claim-splitting (Opp. at 7) also fails. EagleView's agreement to dismiss the *GAF* Case if permitted to add GAF here (Mot. at 1) would resolve any concerns about claim-splitting. And again, adding GAF to this case is not an "end-run" around the Court's

---

Email from L. Mao). Nearmap declined and elected to press forward with depositions notwithstanding the uncertainty about the scope of the case.

[4] To the extent the Court finds that EagleView is effectively asking for reconsideration, reconsideration is warranted based on the new evidence. *See* Opp. at 7 (acknowledging "new evidence previously unavailable" is grounds warranting reconsideration (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000))).

prior ruling. To the contrary, EagleView's amendment to add GAF confirms the changed

situation since the prior consolidation motion. Previously, Nearmap argued that the *Nearmap*

and *GAF* Cases could not be consolidated for trial under 35 U.S.C. § 299. Dkt. 63. EagleView's

proposed amended complaint, however, explains—based on previously unknown information—

that § 299 is satisfied here based on Nearmap's and GAF's involved with QuickMeasure reports.

Dkt. 156 ¶ 3.

Thus, the Court's prior denial of pretrial consolidation should not control the outcome

here. *See also* Mot. at 11.

### D.     EagleView's Amendment Is Not Futile.

In a last-ditch effort to prevent EagleView's amendment, Nearmap argues that the new

claims are futile. Not so. Nearmap's cursory and misleading analysis of EagleView's claims do

not show that leave should be denied on the basis of futility.

First, Nearmap incorrectly argues that EagleView has not identified the misappropriated

trade secrets with enough specificity. Opp. at 8-9. But Nearmap quotes the wrong paragraph—

¶ 59, where EagleView describes the general categories of trade secrets it owns and protects,

instead of ¶ 66, where specific circumstances of misappropriation are described. The specific

trade secrets are identified in ¶ 66—for example, ██████████████████████████████

████████████████████████████████████████████████████████████████████████

Moreover, EagleView's allegations refer to ████████████████████████████████

██████████████████████████, which Nearmap was able to identify. Opp. at 2 (arguing

EagleView's trade secret claims are based on "a single email"). These allegations are more than

enough to alert Nearmap to the parameters of EagleView's misappropriation claims.

Second, Nearmap argues the new patent claims are ineligible under § 101.  But

Nearmap's one-paragraph argument fails to perform any detailed § 101 analysis of any of the

new patents.  For some patents, Nearmap relies on GAF's motion to dismiss, which remains

pending and which EagleView rebutted in its opposition brief.  For the other two patents,

Nearmap provides only a conclusory assertion of an abstract idea and lack of inventive concept.

This falls far short of the showing needed for dismissal of patent claims on § 101 grounds.

Notably, Nearmap already challenged two of EagleView's currently asserted patents on § 101

grounds, and elected not to challenge the others at all, and the Court rejected that challenge.  Dkt.

50.  Nearmap does not explain why the outcome would be different here.

Thus, Nearmap has not shown that amendment should be denied on futility grounds.

III.    **CONCLUSION**

For the reasons set forth above, in its motion, and in its reply to GAF, EagleView

respectfully requests that the Court grant EagleView leave to file an amended complaint, or

alternatively order that the *Nearmap* and *GAF* Cases are consolidated.

Dated:  December 7, 2022                                  /s/ Juliette P. White

                                                         Juliette P. White
                                                         Parsons Behle & Latimer

                                                         201 South Main Street, Suite 1800
                                                         Salt Lake City, Utah 84111
                                                         Telephone: 801.532.1234
                                                         Fax: 801.536.6111
                                                         JWhite@parsonsbehle.com
                                                         ecf@parsonsbehle.com

11

L. Kieran Kieckhefer
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
kieran.kieckhefer@shearman.com

Matthew G. Berkowitz
Patrick Colsher
Lillian J. Mao
Yue (Joy) Wang
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
matthew.berkowitz@shearman.com
patrick.colsher@shearman.com
lillian.mao@shearman.com
joy.wang@shearman.com

Eric S. Lucas
SHEARMAN & STERLING LLP
599 Lexington Ave.
New York, NY 10022
Telephone: 212.838.4955
Fax: 646.848.4955
eric.lucas@shearman.com

*Attorneys for Plaintiffs Eagle View
Technologies, Inc. and Pictometry
International Corp.*

12

## CERTIFICATION OF WORD COUNT

I, Juliette P. White, certify that this PLAINTIFFS' REPLY TO NEARMAP'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, THEIR MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASES contains 3,096 words and complies with DUCivR 7-1(a)(4).

/s/ Juliette P. White

Juliette P. White

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 7th day of December, 2022, I caused to be electronically filed and served the foregoing PLAINTIFFS' REPLY TO NEARMAP'S OPPOSITION TO, AND IN FURTHER SUPPORT OF, THEIR MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASES with the Clerk of the Court using the Court's electronic filing system, which sent notification of such filing to all attorneys listed on the docket.

/s/ Juliette P. White

Juliette P. White

*Attorney for Plaintiffs*