Juliette P. White, USB #9616
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES INC., PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> NEARMAP US, INC., <br><br> Defendant. | **PLAINTIFFS' REPLY TO THIRD-PARTY GAF MATERIALS LLC'S RESPONSE TO, AND IN FURTHER SUPPORT OF, THEIR MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASES** <br><br> REDACTED VERSION <br><br> Case No. 2:21-cv-00283-TS-DAO <br><br> The Honorable Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT...........................................................................................................2

    A. EagleView Timely Moved To Add GAF Once The Intersectionality Of The *Nearmap* And *GAF* Cases Was Revealed To EagleView. .....................................2

    B. GAF Overstates The Procedural Challenges Of Adding It As A Defendant...........4

        1. GAF Can Be Folded Into A New Schedule For The *Nearmap* Case...........4

        2. The Court Is Equipped To Address Case Management Issues. ...................6

        3. The Local Patent Rules Do Not Preclude A Sensible Case Schedule. ........7

        4. EagleView's Claims Against Nearmap Do Not Undermine The Benefits Of Adding GAF. ..............................................................................8

    C. Adding GAF As A Defendant, Or Alternatively Consolidation, Is Far More Efficient Than Serially Litigating The Common Issues. .........................................9

III. CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Sipp v. Unumprovident Corp.*,
  107 F. App'x 867 (10th Cir. 2004) ....................................................................................6, 7

*Touchstone Grp., LLC v. Rink*,
  No. 11-CV-02971, 2012 WL 2921223 (D. Colo. July 16, 2012) ..............................................6

**Other Authorities**

Fed. R. Civ. P. 8(a) ...........................................................................................................7

Fed. R. Civ. P. 16 .............................................................................................................7

Fed. R. Civ. P. 42 .............................................................................................................7

LPR 1.2 .............................................................................................................................7

LPR 1.3 .............................................................................................................................7

EagleView submits this reply in further support of its Motion for Leave to File an Amended Complaint or, in the Alternative, to Consolidate Cases (Dkt. 155) ("Motion") and in response to third-party GAF Materials LLC's ("GAF") response (Dkt. 176).

## I.     INTRODUCTION

EagleView only recently learned the full extent of Nearmap's participation in QuickMeasure reports and that, in fact, it is ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Importantly, Nearmap and GAF have always known their roles in QuickMeasure. However, that information ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄, and was concealed from EagleView until EagleView discovered it. The full extent of the relationship between Nearmap and GAF regarding QuickMeasure and the full details of GEOM have only recently been provided to EagleView, with certain material information only being produced as recently as last week. Now that EagleView finally knows the truth, it timely moved to bring GAF into these proceedings as a defendant by moving to amend the complaint or, in the alternative, consolidate the *Nearmap* and *GAF* Cases.[1]

Uniting EagleView's QuickMeasure-related claims in a single proceeding is the best way to proceed. GAF's defenses will rely on substantially the same evidence about how the underlying technology works and implicate similar issues of claim construction that are already at issue in this case. It makes no sense to redo all of that discovery and ask the Court to revisit the same infringement, invalidity, and claim construction issues in a second proceeding. Indeed,

---

[1] The *Nearmap* Case is the above-captioned case, No. 2:21-cv-00283. The *GAF* Case refers to *Eagle View Technologies, Inc. v. GAF Materials LLC*, Case No. 2:22-cv-00215, also pending before this Court.

1

GAF previously proposed consolidation of the *Nearmap* and *GAF* Cases when it asked for the *GAF* Case to be transferred from New Jersey to this Court.

GAF relies on a (1) revisionist procedural history designed to paint EagleView as dilatory and (2) mischaracterization of the local rules to throw up false barriers to a unified proceeding. As explained (and made clear by the discovery record), EagleView only recently discovered the intersectionality of its claims against Nearmap and GAF—again, despite both Nearmap and GAF having known the relevant facts all along. In addition, procedural issues are better addressed comprehensively as to both GAF and Nearmap, rather than managing two cases separately. For example, the Court can set an updated case schedule that enables GAF to "get up to speed" and Nearmap to serve contentions on newly asserted patents in parallel, instead of continuing to treat GAF as a third party now and redoing the work with GAF as a defendant later. GAF's objections are overstated and can be addressed through a practical approach to case management and by avoiding the contorted reading of the rules that GAF advocates.

For all of the reasons set forth in its briefing, EagleView's Motion should be granted.

II. **ARGUMENT**

    A. **EagleView Timely Moved To Add GAF Once The Intersectionality Of The *Nearmap* And *GAF* Cases Was Revealed To EagleView.**

As explained in the Motion, EagleView initially filed the *Nearmap* and *GAF* Cases without knowing the specifics regarding how Nearmap was purportedly involved in the creation of QuickMeasure reports. Mot. at 3-6. In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D (GAF_00001062). Thanks to hard-won discovery in this case, EagleView only recently learned the extent of intersectionality between its claims against Nearmap and

2

GAF. Mot. at 3-6. EagleView has since worked diligently to review the evidence, analyze its claims, prepare a lengthy amended complaint, and bring the Motion. EagleView also gave notice to both Nearmap and GAF before filing the Motion, seeking to preemptively address some of the discovery scheduling issues that have been complicated by there being two separate cases relating to QuickMeasure.

In arguing that EagleView unduly delayed, GAF employs a revisionist history of the two cases. First, GAF never informed EagleView or this Court about the specifics of the relationship between Nearmap and GAF as it pertained to EagleView's claims. The mere fact that "Nearmap has been directly involved in the generation of QuickMeasure reports" (Resp. at 9) was not enough for EagleView to know that Nearmap is also liable for infringement. All GAF could say was that Nearmap provided the *imagery* used in QuickMeasure reports. As for the software that performs the steps claimed in EagleView's patents, GAF could not say as between Nearmap and Pushpin. Critically, the New Jersey court found that "none of the parties purport to know where the software behind GAF's Accused Product was developed (*or which entity even developed the software for that matter*)." *GAF* Case, Dkt. 65 at 12. Thus, EagleView did not have the basis at the time to assert infringement against Nearmap, and would have been guessing if it did so.

Second, as explained more fully in its concurrently filed Reply to Nearmap, EagleView could not have learned of the intersectionality based solely on Nearmap's production of source code, allegedly in January 2022.[2] Nearmap's discovery responses disclaimed ▮

---

[2] GAF cites Nearmap's brief for this assertion and has no firsthand knowledge of Nearmap's productions in this case or of EagleView's source code reviews. Thus, EagleView respectfully directs the Court to the briefing between EagleView and Nearmap for this issue.

███████████████████████████████ as an accused product, and ████████ ████████████████████████████. Only after obtaining document productions and deposition testimony from a third party, Pushpin, did EagleView gain any clarity about its potential QuickMeasure-related claim as it pertains to Nearmap. *See* Mot. at 5-6. Thereafter, further factual and legal research, client consultation, and the ultimate drafting of EagleView's proposed amended complaint remained to be done. Thus, it was only recently that EagleView could bring the Motion.

EagleView's Motion is timely, and should be granted.

### B. GAF Overstates The Procedural Challenges Of Adding It As A Defendant.

GAF makes the inaccurate and alarmist prediction that adding GAF as a defendant in the *Nearmap* Case would create a "procedural nightmare." Resp. at 5. To the contrary, it is more than possible to fold GAF into the current proceedings—and indeed, more efficient to handle the addition of GAF at the same time as adding the additional QuickMeasure claims against Nearmap.³ GAF's position does not resolve any of the purported challenges it identifies but merely kicks them down the road, when even more work will have to be duplicated, and even thornier issues of preclusion and cross-use may arise.

#### 1. GAF Can Be Folded Into A New Schedule For The *Nearmap* Case.

First, GAF cites the different procedural postures of the *Nearmap* and *GAF* Cases as a reason not to add GAF as a defendant. But the current procedural postures actually support adding GAF now. While the Nearmap case is nearing completion of discovery on certain of

---

³ EagleView is already accusing Nearmap of infringement based on software used in creating QuickMeasure reports. However, EagleView is seeking to add against Nearmap patents that are currently only asserted against QuickMeasure in the *GAF* case.

4

EagleView's claims, EagleView has just asserted two additional patents and one additional claim of trade secret misappropriation. The *GAF* Case is in its infancy—accordingly, the GAF case can proceed on the same discovery schedule as the new claims in the *Nearmap* Case. In other words, the current claims against Nearmap will be paused temporarily while the newly proposed claims against Nearmap can proceed in tandem with the claims against GAF. Doing it this way will allow all three sets of claims to get on the same schedule. Otherwise, the *Nearmap* Case will be much farther along than the *GAF* Case even though certain of the same factual and legal issues are present in both the *Nearmap* and *GAF* Cases, which could impair the fair adjudication of issues in both cases. *See, e.g.*, Mot. at 10-11 (describing, as an example, the problems of duplicative claim construction proceedings in the *Nearmap* and *GAF* Cases).

GAF's "quagmire" hyperbole of scheduling questions (Resp. at 6) is thus easily answered and resolved. Similarly, adding GAF as a defendant will allow it to participate in future depositions while EagleView and Nearmap take discovery on the new claims against Nearmap. The parties can meet and confer regarding "how to handle depositions that have already occurred, and that GAF was unable to attend" (Resp. at 6). Notably, excluding GAF from the current proceedings, as GAF asks, would only perpetuate the problem that GAF has not been able to participate fully in discovery. Later, when the same issues are being litigated in the *GAF* Case, the parties would still have to deal with the discovery record from the *Nearmap* Case, which contains many facts relevant to the claims against GAF but in which GAF has so far been minimally involved in developing. For example, although GAF has a relationship with Pushpin, it did not participate in the Pushpin deposition—similar issues would continue to arise until GAF is added to this case. As another example, GAF argues that consolidation would disrupt the

5

*Markman* process that is already underway (Resp. at 10), but, again, denying EagleView's Motion would result in an unfair and inefficient situation: *Markman* would need to be almost completely redone in the *GAF* Case because six of the patents currently overlap yet GAF would not have participated in the first *Markman* between EagleView and Nearmap. The better course is to adjust the *Nearmap* schedule now, so that the Court need only hold one single *Markman* proceeding on EagleView's patent families.

Thus, adding GAF as a defendant now is the best way to proceed, and best way to address the purported challenges GAF itself identified.[4]

### 2. The Court Is Equipped To Address Case Management Issues.

Second, GAF relies on a single unpublished and factually distinguishable case to argue that the Court can exercise "inherent authority" to deny adding GAF as a defendant. Resp. at 6 & n.1 (citing *Sipp v. Unumprovident Corp.*, 107 F. App'x 867, 875 (10th Cir. 2004)). The cited portion of *Sipp* did not involve an attempt to add a defendant, or even new claims. Rather, the

---

[4] Alternatively, for the same reasons, the *Nearmap* and *GAF* Cases should be consolidated. GAF's reliance on *Touchstone Grp., LLC v. Rink*, No. 11-CV-02971, 2012 WL 2921223, at *4 (D. Colo. July 16, 2012), for the proposition that the cases' "vastly different procedural postures" preclude consolidation (Resp. at 10) is misplaced. The two cases at issue in *Touchstone* were vastly different—involving "different plaintiffs bringing different legal claims and representing different interests," "significant differences in questions of law," and "significant differences in how they are proceeding procedurally" beyond mere schedule (e.g., one was a class action that would require briefing and discovery on class certification). *Touchstone*, 2012 WL 2921223, at *2-3. In contrast, the *Nearmap* and *GAF* Cases involve EagleView asserting the same patent infringement claims against the same accused product. Because of the significant overlap, the benefits of consolidation here outweigh the challenges. Indeed, even *Touchstone*—although denying limited consolidation for discovery—still "encourage[d] the parties to cooperate to avoid unnecessary and duplicative discovery" and contemplated that "such consolidation [may] become appropriate at a later time." *Id.* at *4. Here, consolidation is appropriate as alternative relief, and would be the best way for the parties to avoid duplicative discovery.

plaintiff had argued that the district court should have considered his claims under state statutes that would have allowed him to recover extra-contractual damages. *Sipp*, 107 F. App'x at 874-75. The 10th Circuit found that the plaintiff had satisfied Fed. R. Civ. P. 8(a) and provided sufficient notice of his state law claims and ordered the district court to reinstate them. *Id.* at 875. *Sipp*'s holding sheds little if any light on the issue here, which has nothing to do with whether GAF has notice of EagleView's claims.

*Sipp* aside, EagleView agrees that the Court has broad authority and discretion to manage the cases on its docket, and is fully equipped to manage scheduling, discovery, and trial(s) in these cases. For example, the Court may issue case management and scheduling orders, and separate trial of certain issues or claims. Fed. R. Civ. P. 16, 42. These powers enable the Court to adopt a problem-solving approach to the situation at hand. The first step is to bring GAF into the case as a party so it is on equal footing and can be fully heard as to matters that impact it. Then all parties can assist the Court with efficient case management.

### 3. The Local Patent Rules Do Not Preclude A Sensible Case Schedule.

Third, GAF incorrectly argues that the Local Patent Rules would create an "unfair and unworkable situation" because "no discovery would be permitted" until GAF answers EagleView's amended complaint. Resp. at 7. Not so. The Local Patent Rules do not bar discovery before a defendant answers. They only provide that ***once a defendant answers***, there is a deadline to complete the initial attorney planning conference and commence fact discovery. LPR 1.2, 1.3. There is no prohibition on the Court setting a different schedule that requires the conference—and opening discovery—earlier. That particularly makes sense here, since the *GAF* Case has been pending for more than 1.5 years.

Indeed, GAF has long contemplated that discovery would open before it answers EagleView's complaint, and that consolidation might be appropriate. In seeking transfer, GAF's counsel argued that the *GAF* Case could be "consolidated on the same schedule that's already been entered into" in the *Nearmap* Case. Dkt. 155-3 (1/21/2022 Hearing Tr.) at 53:10-17. At the time, discovery was already open in the *Nearmap* Case. Consistent with GAF's representation, and with no contradiction of the Local Patent Rules, EagleView proposed a consolidated case schedule that opened discovery for GAF on April 14, 2022, without regard to when GAF would answer the complaint. Dkt. 60-2.

GAF's argument that adding it as a defendant would result in either "jettison[ing] the Local Patent Rules" or a lengthy stay of the QuickMeasure-related claims (Resp. at 7) is a false dichotomy. The Court can adopt a case schedule that faithfully follows the timetable of contention exchanges in the Local Patent Rules, and that also expediently proceeds with discovery on EagleView's claims against both Nearmap and GAF. Nothing in the Local Patent Rules precludes granting EagleView's Motion.

### 4. EagleView's Claims Against Nearmap Do Not Undermine The Benefits Of Adding GAF.

Finally, GAF incorrectly and irrelevantly argues that EagleView's proposed amended complaint has less substantive overlap between GAF and Nearmap because EagleView seeks to add certain new claims against Nearmap only. Resp. at 7. As an initial matter, GAF's method of counting up causes of action, patents, and accused products is not a helpful way to assess the efficiencies to be gained from adding GAF as a defendant. There is no dispute that EagleView's amended claims against Nearmap ***completely encompass*** the claims in the *GAF* Case, but for the difference in defendants. Thus, bringing GAF into the *Nearmap* Case—as opposed to

8

duplicating all of those claims in the *GAF* Case—is manifestly more efficient. GAF does not explain why this is prejudicial. If anything, GAF is being given a fuller opportunity to be heard and to defend its own accused product while Nearmap must defend multiple accused products.

      **C.**      **Adding GAF As A Defendant, Or Alternatively Consolidation, Is Far More Efficient Than Serially Litigating The Common Issues.**

In presenting the supposed challenges of granting EagleView's Motion, GAF conspicuously does not address the alternative: re-litigating QuickMeasure in the *GAF* Case. If the Motion is denied, GAF will continue to participate in the *Nearmap* Case as only a third party, even as Nearmap and EagleView litigate the merits of whether QuickMeasure infringes. Nearmap and EagleView will exchange discovery, take depositions, and produce a factual record on issues highly relevant to the *GAF* Case, all without GAF's input. Later, GAF and EagleView will have to figure out how to carry that history over into the *GAF* Case.

For example, GAF and EagleView will have to address the depositions taken in the *Nearmap* Case "that GAF was unable to attend" (Resp. at 6), many of which will contain technical information relevant the QuickMeasure infringement case. Notably, GAF has represented that it does not know many of the technical details of the software underlying QuickMeasure reports, so it would be just as reliant as EagleView on the same discovery from Nearmap, Pushpin, and others. GAF and EagleView would be faced with the prospect of either re-deposing those entities (who are third parties in the *GAF* Case) or using deposition transcripts taken before GAF's participation.

GAF and EagleView would also have greater burdens in having to sit for depositions again. Currently, GAF and EagleView are attempting to schedule a deposition of GAF as a third party in the *Nearmap* Case. However, as GAF admits, it refuses to sit for deposition except

subject to "terms and conditions" that are not "unfairly prejudicial." Resp. at 8. If added as a defendant, GAF would be spared a second deposition, and its need to impose unusual conditions would be obviated.[5]

Any procedural challenges that GAF (or Nearmap) has identified would be much worse in the scenario where the *Nearmap* and *GAF* Cases continue as they are, both asserting infringement by QuickMeasure but without coordination. The better course—by far—is to unify the proceedings and set a case schedule accordingly.

### III.  CONCLUSION

For the reasons set forth above, in its motion, and in its reply to Nearmap, EagleView respectfully requests that the Court grant EagleView leave to file an amended complaint, or alternatively order that the *Nearmap* and *GAF* Cases are consolidated.

Dated:  December 7, 2022                           */s/ Juliette P. White*

                                                   Juliette P. White
                                                   Parsons Behle & Latimer

                                                   201 South Main Street, Suite 1800

---

[5] GAF argues that part of its position is based on the Protective Order. *Id.* But the Protective Order does not "bar[] the use of any confidential testimony for any purpose outside in [*sic*] the Nearmap Action," as GAF asserts (*id.*). Rather, the Protective Order restricts use of information by a ***receiving party*** (here, EagleView). Utah Standard Protective Order at 8-9 ("Information that has been designated CONFIDENTIAL INFORMATION or as CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY shall be disclosed by the receiving party only to Qualified Recipients. All Qualified Recipients shall hold such information received from the disclosing party in confidence, shall use the information only for purposes of this action[, etc.]"). The Protective Order says nothing about what GAF, as the ***producing party***, may do with its own designated information and, notably, does not shield GAF from having to produce that information in another case.

Salt Lake City, Utah 84111
Telephone: 801.532.1234
Fax: 801.536.6111
JWhite@parsonsbehle.com
ecf@parsonsbehle.com

L. Kieran Kieckhefer
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1100
Fax: 415.616.1339
kieran.kieckhefer@shearman.com

Matthew G. Berkowitz
Patrick Colsher
Lillian J. Mao
Yue (Joy) Wang
SHEARMAN & STERLING LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Fax: 650.838.3699
matthew.berkowitz@shearman.com
patrick.colsher@shearman.com
lillian.mao@shearman.com
joy.wang@shearman.com

Eric S. Lucas
SHEARMAN & STERLING LLP
599 Lexington Ave.
New York, NY 10022
Telephone: 212.838.4955
Fax: 646.848.4955
eric.lucas@shearman.com

*Attorneys for Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp.*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on the 7th day of December, 2022, I caused to be electronically filed and served the foregoing PLAINTIFFS' REPLY TO THIRD-PARTY GAF MATERIALS LLC'S RESPONSE TO, AND IN FURTHER SUPPORT OF, THEIR MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO CONSOLIDATE CASES with the Clerk of the Court using the Court's electronic filing system, which sent notification of such filing to all attorneys listed on the docket.

/s/ Juliette P. White
Juliette P. White

*Attorney for Plaintiffs*