UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC., and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> NEARMAP US, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' SHORT FORM MOTION FOR A PROTECTIVE ORDER (DOC. NO. 153)** <br><br> Case No. 2:21-cv-00283 <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

In this patent infringement case, Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "EagleView") move for a protective order to prevent Defendant Nearmap US, Inc. from deposing EagleView's CEO, Chris Jurasek, and general counsel, Kim Nakamaru.[1] EagleView argues these depositions are unjustified under Rule 26 of the Federal Rules of Civil Procedure, the apex doctrine, and the counsel deposition doctrine.[2] Nearmap, on the other hand, contends Mr. Jurasek and Ms. Nakamaru have relevant, personal knowledge which justifies deposing them.[3] The court held a hearing on December 12, 2022.[4] Because Nearmap has not demonstrated Mr. Jurasek and Ms. Nakamaru have unique personal knowledge

---

[1] (Pls.' Short Form Disc. Mot. for a Protective Order Precluding Deps. of CEO Chris Jurasek and General Counsel Kim Nakamaru ("Mot."), Doc. No. 153.)

[2] (*See id.*)

[3] (Def.'s Opp'n, Doc. No. 163.)

[4] (*See* Minute Entry, Doc. No. 187.)

relevant to the existing claims and defenses, a protective order precluding the depositions is warranted under Rule 26 and the apex doctrine.[5]  Accordingly, EagleView's motion is granted.

## LEGAL STANDARDS

Rule 26(c) of the Federal Rules of Civil Procedure permits the court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[6]  Under Rule 26(b), the scope of discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[7]

The apex doctrine allows a court to protect a high-level corporate executive from the burdens of a deposition when any of the following circumstances exist:

> (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company.[8]

"[T]he party seeking to depose an executive bears an initial burden of making some showing that the executive has unique personal knowledge of some relevant issues."[9]  "Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique

---

[5] Because a protective order is warranted on these grounds, the court need not address EagleView's argument regarding the counsel deposition doctrine.

[6] Fed. R. Civ. P. 26(c)(1).

[7] Fed. R. Civ. P. 26(b)(1).

[8] *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528-REB-KLM, 2011 U.S. Dist. LEXIS 68940, at *3 (D. Colo. June 27, 2011) (unpublished).

[9] *Id.* at *4 (internal quotation marks omitted).

personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate."[10]

## BACKGROUND

EagleView brought this action against Nearmap alleging infringement of eight patents.[11] EagleView seeks damages, including lost profits, in an amount not less than a reasonable royalty.[12]

EagleView settled a separate infringement action against Xactware Solutions, Inc. and Verisk Analytics, Inc. (collectively, "Verisk") involving related patents.  Eagle View produced the Verisk settlement agreement to Nearmap in discovery in this case, and the court granted Nearmap's motion to compel EagleView to produce other documents related to the Verisk settlement, including an "integration agreement" and documentation of settlement negotiations.[13] The court found these documents relevant to EagleView's claimed damages in this case, including calculation of a reasonable royalty.[14]

After receiving the settlement agreement and related documents, Nearmap moved to amend its answer to add a patent misuse defense based on the Verisk settlement.[15]  Nearmap's motion to amend remains pending.

---

[10] *Id.*

[11] (Compl. ¶ 2, Doc. No. 2.)

[12] (*Id.* at 95.)

[13] (Mem. Decision and Order Granting in Part Def.'s Short Form Disc. Mot. Re. Settlement Docs., Doc. No. 93.)

[14] (*Id.* at 5.)

[15] (Def.'s Mot. for Leave to File First Am. Answer and Countercls., Doc. No. 101.)

## ANALYSIS

Nearmap seeks to depose Mr. Jurasek and Ms. Nakamaru regarding the Verisk settlement and related negotiations.[16]  Nearmap argues this topic is relevant to both Nearmap's proposed patent misuse defense and to calculation of damages for EagleView's existing claims.[17] Nearmap asserts Mr. Jurasek and Ms. Nakamaru have unique, personal knowledge regarding this topic because they each participated in oral negotiations with Verisk representatives leading up to the settlement.[18]  Nearmap also contends their names appear on "nearly 500 key documents"[19] and provided six examples as supporting exhibits.[20]

EagleView argues any claim of relevance to Nearmap's proposed patent misuse defense is unavailing because the proposed defense is not part of the current pleadings.[21]  EagleView also contends Nearmap could obtain information regarding the Verisk settlement through other means, such as a Rule 30(b)(6) deposition, and, therefore, Nearmap has not shown the executives have "truly unique" knowledge.[22]  EagleView further argues the depositions will impose severe hardship on the witnesses given their roles at the company.[23]

---

[16] (Opp'n 2, Doc. No. 163.)

[17] (*Id.* at 1–2.)

[18] (*Id.*)

[19] (*Id.* at 2.)

[20] (Exs. 1–6 to Mot., Doc. Nos. 165-2–165-7 (sealed).)

[21] (Mot. 2, Doc. No. 153.)

[22] (*Id.* at 2–3.)

[23] (*Id.* at 3.)

A protective order preventing Mr. Jurasek and Ms. Nakamaru from being deposed is warranted under Rule 26 and the apex doctrine. As an initial matter, Nearmap's argument that the depositions are relevant to its proposed patent misuse defense fails to establish relevance under Rule 26(b)(1). Parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."[24] Discovery must be relevant to "issues of the present lawsuit as it currently exists" and cannot be used to "explore alternative theories."[25] Because Nearmap's proposed patent misuse defense is not part of the current pleadings, discovery related to this proposed defense is not permitted under Rule 26.

Nearmap also argues the depositions are relevant to the calculation of damages under the current pleadings. But Nearmap has failed to demonstrate Mr. Jurasek and Ms. Nakamaru have unique personal knowledge relevant to this issue.

Damages in patent infringement cases are calculated by determining a reasonable royalty.[26] Settlement agreements from prior litigation involving the same (or related) patents are relevant to this determination and, therefore, discoverable.[27] The underlying settlement negotiations may also be relevant and discoverable where they "could aid defendant in its

---

[24] *Gatti v. Granger Med. Clinic, P.C.*, No. 2:19-cv-00028, 2019 U.S. Dist. LEXIS 202299, at *5 (D. Utah Nov. 20, 2019) (unpublished) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendments).

[25] *US Magnesium, LLC v. ATI Titanium LLC*, No. 2:17-cv-00923, 2020 WL 12847147, at *6 (D. Utah May 22, 2020) (unpublished).

[26] *Modern Font Applications v. Alaska Airlines*, No. 2:19-cv-00561, 2021 U.S. Dist. LEXIS 21563, at *6 (D. Utah Feb. 3, 2021) (unpublished) (citing 35 U.S.C. § 284).

[27] *Id.* at *7.

calculations concerning a reasonable royalty amount and damages."[28]  And settlement-related
communications may "be key in determining whether the settlement agreements accurately
reflect the inventions' value or were strongly influenced by a desire to avoid or end full
litigation."[29]  For these reasons, the court previously ordered EagleView to produce
documentation of negotiations related to the Verisk settlement to Nearmap, finding these
documents relevant to damages.  EagleView produced email exchanges between EagleView and
Verisk leading to the settlement, including redlined drafts of the settlement agreement.

 While it is undisputed that Mr. Jurasek and Ms. Nakamaru participated in negotiating the
Verisk settlement, there is no indication they have unique personal knowledge relevant to
calculation of a reasonable royalty in this case.  Nearmap asserts they each participated in one-
on-one oral conversations with Verisk representatives, which no other witness can testify about.
As support for this assertion, Nearmap provided negotiation emails produced by EagleView
which reference phone calls and meetings involving these executives.[30]  But the discussion
topics mentioned in the emails do not include valuation of the patents or the settlement amount,
and there is no evidence Mr. Jurasek or Ms. Nakamaru have unique knowledge on these topics.
Further, EagleView has already produced the final settlement agreement, negotiation emails, and
redlined settlement drafts reflecting the consideration and exchanges of value that influenced the
settlement amount.  Nearmap has failed to demonstrate Mr. Jurasek and Ms. Nakamaru have

---

[28] *Kajeet, Inc. v. Qustodio, LLC*, No. 18-1519-JAK, 2019 U.S. Dist. LEXIS 227979, at *23 (C.D. Cal. Oct. 22, 2019) (unpublished).

[29] *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F.Supp.2d 662, 664 (E.D. Tex. 2010).

[30] (Exs. 1–6 to Opp'n, Doc. Nos. 165-2–165-7 (sealed).)

unique knowledge, above and beyond the information in this production, regarding whether the Verisk settlement amount reflects a reasonable royalty.

Although Nearmap argues these executives' names appear on other "key documents" in this case, Nearmap filed no other examples.[31]  And this assertion, even if true, is insufficient to show the executives have unique personal knowledge of relevant topics which no other witnesses could address.

Because Nearmap has not established Mr. Jurasek and Ms. Nakamaru have unique personal knowledge relevant to the existing claims and defenses, a protective order prohibiting Nearmap from deposing them is warranted under Rule 26 and the apex doctrine.

## CONCLUSION

EagleView's motion for a protective order to preclude the depositions of Mr. Jurasek and Ms. Nakamaru is GRANTED.

DATED this 9th day of January, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[31] Nearmap provided an additional email at the hearing but did not seek to enter it into the record for this motion.  Accordingly, it is not addressed here.