UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EAGLE VIEW TECHNOLOGIES, INC.; and PICTOMETRY INTERNATIONAL CORP., <br><br> Plaintiffs, <br><br> v. <br><br> NEARMAP US, INC.; NEARMAP AUSTRALIA PTY LTD; and NEARMAP LTD, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' SHORT FORM DISCOVERY MOTION REGARDING THE SCOPE OF THE ACCUSED PRODUCTS (DOC. NO. 111)** <br><br> Case No. 2:21-cv-00283 <br><br> District Judge Ted Stewart <br><br> Magistrate Judge Daphne A. Oberg |

In this patent infringement case, Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "EagleView") filed a motion to compel Defendant Nearmap US, Inc.[1] to supplement its discovery responses in two areas.[2] First, EagleView seeks to compel Nearmap to answer interrogatories regarding unidentified products with "similar functionality" to the accused products named in EagleView's infringement contentions.[3] Second, EagleView seeks to compel Nearmap to supplement its responses to include discovery related to all uses and supply chains of Nearmap's Roof Geometry tool (an accused product).[4] Nearmap filed a

---

[1] At the time this motion was filed and briefed, Nearmap US, Inc. was the only defendant. EagleView has since filed an amended complaint adding claims against defendants Nearmap Australia Pty Ltd and Nearmap Ltd. (*See* Doc. No. 274.) Because these new defendants were not involved in this motion, Nearmap US, Inc. is referred to simply as "Nearmap" in this order.

[2] (*See* Pls.' Short Form Disc. Mot. Re. the Scope of the Accused Products ("Mot."), Doc. No. 111.)

[3] (*See id.* at 1–2.)

[4] (*See id.* at 3.)

1

response, opposing EagleView's motion as to the first issue and indicating it had provided all responsive documents and information on the second issue.[5] The court held a hearing on the motion on October 31, 2022.

EagleView's motion is denied. First, EagleView's request to compel discovery responses regarding unidentified products with similar functionality is denied. As explained below, EagleView's attempt to define "accused products" to include unidentified products with "similar functionality" to named accused products is inconsistent with the local patent rules. And EagleView fails to show the requirements for discovery regarding unaccused products are met. Second, EagleView's motion is denied without prejudice with respect to discovery regarding the Roof Geometry tool, where Nearmap made additional responsive productions before the hearing and represents it is not withholding responsive documents.

## BACKGROUND

EagleView brought this action against Nearmap, alleging infringement of eight patents related to rooftop aerial measurement technology.[6] EagleView's original complaint identified the accused products as "(1) Nearmap on OpenSolar and (2) MapBrowser."[7]

In January 2022, EagleView propounded interrogatories seeking information regarding accused products.[8] The definitions section of the interrogatories defined the term "accused

---

[5] (*See* Opp'n to Pls.' Short Form Disc. Mot. Re. the Scope of the Accused Products ("Opp'n"), Doc. No. 114.)

[6] (Compl. ¶¶ 1–2, Doc. No. 2.)

[7] (*Id.* ¶ 1.)

[8] (*See* Ex. A to Mot., Doc. No. 113-1 at 1–2 (sealed).) EagleView filed a single exhibit containing excerpts of the discovery requests, responses, disclosures, and infringement contentions relevant to this motion.

products" as products identified in EagleView's complaint and infringement contentions, "and *any other Nearmap Product that performs similar functionality* (including at least any Nearmap rooftop aerial measurement tool, product, component, or other software or hardware functionality)."[9] In February 2022, EagleView served initial infringement contentions identifying the accused products as MapBrowser; Nearmap on OpenSolar; "software and imagery features that are used with, or integrated into" those products including Nearmap Vertical, Nearmap Oblique, and Nearmap 3D; and "*any other Nearmap products that contain similar functionality.*"[10]

In response to the interrogatories, Nearmap objected to EagleView's "accused products" definition only "to the extent it seeks information not within the possession, custody, or control of [Nearmap] located after a reasonable search."[11] Nearmap then provided responsive information for MapBrowser and Nearmap on OpenSolar—the accused products specifically named in the complaint and infringement contentions.[12]

In July 2022, EagleView supplemented its initial infringement contentions to identify a "'Roof Geometry Technology' product" as an additional accused product.[13] EagleView also stated: "Nearmap purportedly disputes that the 'Roof Geometry Technology' product was included as an Accused Product because it was not specifically named, and has on that basis

---

[9] (*Id.* at 1–2 (emphasis added).)

[10] (*Id.* at 2 (emphasis added).)

[11] (*Id.*)

[12] (*See id.* at 3–4.)

[13] (*Id.* at 4.)

excluded from discovery information as to this Roof Geometry product. EagleView contends that excluding such product from discovery was improper."[14]

EagleView propounded a second set of interrogatories in August 2022.[15] In this set, EagleView defined "accused products" as all products identified in its complaint, accused instrumentality disclosures, and forthcoming infringement contentions, including:

> each version of MapBrowser, Nearmap on OpenSolar, Nearmap Vertical, Nearmap Oblique, Nearmap 3D, all Nearmap roofing geometry technology, Nearmap point cloud roof geometry, and *any other Nearmap Product that performs similar functionality* (including at least any Nearmap rooftop aerial measurement or roofing geometry tool, product, component, or other software of hardware functionality, and, for the avoidance of any doubt, any Nearmap APIs or applications) . . . or any other Nearmap product that involves roofing geometry functionality[.][16]

In response, Nearmap objected to the inclusion of unidentified products in EagleView's definition of "accused products."[17] Nearmap stated it understood the accused products to encompass only the three products that EagleView had specifically identified in EagleView's complaint, accused instrumentality disclosures, initial and supplemental infringement contentions, and final infringement contentions.[18] Nearmap asserted that discovery beyond these products was "contrary to the rules and in particular the requirement that EagleView provide claim charts for each of the Accused Products and Accused Functionalities in its infringement contentions," citing Rules 2.3 and 3.1 of the District of Utah's Local Patent Rules.[19]

---

[14] (*Id.*)

[15] (*See id.* at 4–5.)

[16] (*Id.*)

[17] (*Id.* at 5–6.)

[18] (*Id.* at 5.)

[19] (*Id.*)

Accordingly, Nearmap objected to "any attempt to seek discovery on products not identified as Accused Products or Accused Functionalities."[20]

EagleView then filed the instant discovery motion, seeking to compel Nearmap to provide discovery responses regarding all products with "similar functionality" to the named accused products.

Shortly thereafter, EagleView moved to amend its complaint.[21] The motion to amend was granted in part,[22] and EagleView filed an amended complaint on March 28, 2023.[23] EagleView's amended complaint identifies the accused products as "(1) Nearmap on OpenSolar, (2) Nearmap's MapBrowser, (3) the roof geometry technology Nearmap acquired from Primitive LLC d/b/a Pushpin ('Pushpin') and associated software and products, and (4) other Nearmap products that contain or are produced using similar functionality."[24]

## ANALYSIS

**A. Discovery Regarding Products with "Similar Functionality"**

EagleView seeks to compel Nearmap to provide interrogatory responses concerning unidentified products with similar functionality to the accused products specifically named in EagleView's complaint, infringement contentions, and other disclosures.[25] As an initial matter, EagleView contends Nearmap's objection to the inclusion of unidentified products in

---

[20] (*Id.* at 5–6.)

[21] (*See* Doc. No. 155.)

[22] (*See* Doc. No. 267.)

[23] (First Am. Compl., Doc. No. 274.)

[24] (*Id.* ¶ 1.)

[25] (Mot., Doc. No. 111.)

EagleView's definition of "accused products" is waived because Nearmap did not raise this objection in response to EagleView's first set of interrogatories.[26] EagleView also argues discovery regarding unnamed products is warranted because Nearmap sells some of its products confidentially, and EagleView has no way to know about them by brand-name other than through discovery.[27]

In opposition, Nearmap argues discovery regarding unidentified products with similar functionality to the named accused products is overbroad and constitutes an impermissible fishing expedition.[28] Nearmap argues such discovery is contrary to the requirements of the local patent rules and applicable case law.[29] Nearmap also disputes that it sells products confidentially in the United States, and Nearmap states it has "produced information about all its U.S. products, including financials and source code."[30]

Nearmap's objection to EagleView's definition of "accused products" is not waived. Rule 33 of the Federal Rules of Civil Procedure requires "[t]he grounds for objecting to an interrogatory [to] be stated with specificity."[31] And "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."[32] Although Nearmap did not initially object to the inclusion of unidentified products with "similar functionality" in

---

[26] (*Id.* at 1–2.)

[27] (*Id.* at 2.)

[28] (Opp'n, Doc. No. 114.)

[29] (*Id.* at 2.)

[30] (*Id.* at 3.)

[31] Fed. R. Civ. P. 33(b)(4).

[32] *Id.*

6

EagleView's definition of "accused products," Nearmap only provided responsive information for named accused products. As explained below, Nearmap's approach was consistent with the local patent rules, which require accused products to be specifically identified. EagleView's July 2022 supplement to its infringement contentions revealed a dispute regarding whether Nearmap was required to provide discovery regarding unnamed products. When EagleView propounded its second set of interrogatories shortly thereafter, Nearmap objected to EagleView's expansive definition of "accused products." Thus, Nearmap's initial response was consistent with the meaning of "accused instrumentalities" under the local rules, and Nearmap offered a specific objection to EagleView's broader definition when the dispute regarding unnamed products became apparent. Under these circumstances, there is good cause to excuse Nearmap's failure to specifically object to EagleView's expansive definition of "accused products" in Nearmap's initial response. Nearmap's objection is not waived.

The District of Utah's Local Rules of Patent Practice require a party claiming infringement to "disclose a list identifying each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of the opposing party of which the party claiming infringement is aware."[33] Further, "[e]ach Accused Instrumentality must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process."[34] Such accused instrumentality disclosures must be made within seven days of the filing of an answer.[35] Thereafter, a party claiming infringement must serve initial infringement contentions containing

---

[33] LPR 2.1.

[34] *Id.*

[35] *Id.*

7

"identification of each claim of each asserted patent that is allegedly infringed," and "separately for each claim, identification of each Accused Instrumentality of which the party claiming infringement is aware."[36]  Again, "[e]ach Accused Instrumentality must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process."[37]  The party claiming infringement must also provide a "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality."[38]  The purpose of these requirements is to provide "meaningful disclosure of each party's contentions and support for allegations in the pleadings."[39]

EagleView's attempt to define "accused products" to include unidentified products with similar functionality does not comport with the local patent rules, which require identification of accused instrumentalities by name (if known), product, device, or apparatus.  EagleView cannot circumvent these requirements by creating its own, more expansive definition of "accused products" in a discovery request, or by attempting to include unidentified products in its infringement contentions.  Under the local rules, accused products are only those specifically identified in the infringement contentions.  A broad reference to all products with "similar functionality" fails to adequately identify the products at issue or provide meaningful notice of

---

[36] LPR 2.3(a)–(b).

[37] LPR 2.3(b).

[38] LPR 2.3(c).

[39] LPR Preamble; *see also Vivint, Inc. v. Alarm.com*, No. 2:15-cv-00392, 2020 U.S. Dist. LEXIS 121737, at *19–20 (D. Utah July 9, 2020) (unpublished) ("Utah's LPR Preamble makes clear that the purpose of discovery in patent cases is not solely to enable a claimant to develop information to support[] its claim—but also to allow the defendant to develop facts to support its defense and to allow the defendant to pin down the plaintiff's theory of liability.").

EagleView's contentions. Thus, unidentified products with "similar functionality" are not accused products under the local rules.

Further, EagleView has not demonstrated discovery regarding unaccused products with similar functionality is appropriate. "[T]here is no bright-line rule limiting discovery to only those products specifically accused in a party's infringement contentions."[40] However, "discovery concerning products not listed in the infringement contentions is appropriate only when 1) the infringement contentions give notice of a specific theory of infringement, and 2) the product for which discovery is sought operates in a manner reasonably similar to that theory."[41] The record on this motion does not demonstrate these requirements are met. EagleView provided only a small excerpt of its initial infringement contentions which does not address any specific theory of infringement.[42] And EagleView has not otherwise demonstrated that its infringement contentions give notice of a specific theory of infringement. Thus, EagleView has not shown discovery regarding unnamed, unidentified products is permissible.

In *Vivint, Inc. v. Alarm.com*,[43] a court in this district rejected a similar argument—that a party was entitled to discovery for an unnamed instrumentality because it was "reasonably similar to those accused in the infringement contentions."[44] The court observed that one purpose of the local discovery rules in patent cases is to allow parties to pin down their opponents'

---

[40] *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 33 (D.D.C. 2012).

[41] *nCAP Licensing, LLC v. Apple Inc.*, No. 2:17-cv-00905, 2018 U.S. Dist. LEXIS 235079, at *3 (D. Utah Nov. 30, 2018) (unpublished) (citing *EPOS Techs.*, 842 F. Supp. 2d at 33).

[42] (*See* Ex. A to Mot., Doc. No. 113-1 at 2, 4 (sealed).)

[43] 2020 U.S. Dist. LEXIS 121737, at *23–24.

[44] *Id.* at *23 (internal quotation marks omitted).

theories of liability.[45] The court found that "[n]othing in the text of this district's local patent rules supports the use of the 'reasonably similar' approach Vivint urges this court to adopt."[46] Likewise, EagleView's attempt to seek discovery regarding unidentified products with "similar functionality" fails to provide the level of specificity required by the local patent rules.

EagleView contends courts routinely allow discovery regarding products with similar functionality to specifically accused products.[47] But the cases EagleView relies on do not support its position that such discovery is permissible here. First, EagleView cites *Uniloc USA, Inc. v. Avaya Inc.*[48] for the proposition that "[i]t is often the case that litigants have good reason to believe that additional, unspecified products infringe their patents, but formal discovery may be necessary to ascertain the precise scope and application of the alleged infringement."[49] But this case addressed a motion to strike pleadings; it did not address the scope of permissible discovery regarding unaccused products.[50] Thus, *Uniloc* does not provide useful guidance regarding the parameters of such discovery, and it does not support EagleView's argument that discovery regarding unidentified products with similar functionality is permissible here. As set forth above, discovery regarding unaccused products is appropriate in certain circumstances, but EagleView has failed to demonstrate the requirements for such discovery are met.

---

[45] *Id.* at *19–20; *see also id.* at *17.

[46] *Id.* at *23.

[47] (*See* Mot. 2, Doc. No. 111.)

[48] No. 6:15-cv-1168-JRG, 2016 U.S. Dist. LEXIS 181826 (E.D. Tex. May 13, 2016) (unpublished).

[49] *Id.* at *22.

[50] *See id.*

EagleView also relies on *High 5 Games, LLC v. Marks*,[51] in which a court granted a motion to compel discovery regarding unaccused products believed to include infringing features.[52] *High 5 Games* described two broad approaches to determining relevance of discovery requests in patent cases. "Under the first method, the scope of discovery is limited to products specifically identified in the infringement contentions."[53] "Under the second method, the scope of discovery is expanded to include products reasonably similar to those accused in the infringement contentions."[54] But even under the second approach, "the discovering party must provide a mechanism for the responding party to determine whether a particular device is reasonably similar."[55] The court in *High 5 Games* concluded discovery regarding unaccused products was appropriate because the discovering party had specifically identified them by name, and because the unaccused products "share[d] reasonably similar features and a nexus with those [products] specifically accused of infringement."[56] Here, EagleView has not named the unaccused products for which it seeks discovery, and the mere reference to "similar functionality" provides no mechanism for the responding party (or the court) to determine whether other Nearmap products are reasonably similar to the named accused products. Thus,

---

[51] No. 2:13-cv-07161-JMV-MF, 2019 U.S. Dist. LEXIS 59254 (D.N.J. Apr. 5, 2019) (unpublished).

[52] *Id.* at *23–24.

[53] *Id.* at *19 (internal quotation marks omitted).

[54] *Id.* at *20 (internal quotation marks omitted).

[55] *Id.* at *21 (internal quotation marks omitted).

[56] *Id.* at *23.

*High 5 Games* does not support EagleView's position that discovery regarding unidentified products with similar functionality is permissible in these circumstances.

For these reasons, EagleView's motion to compel Nearmap to provide discovery responses regarding unidentified products with "similar functionality" to the named accused products is denied.

### B. Discovery Regarding Nearmap's Roof Geometry Tool

EagleView seeks to compel Nearmap to supplement its responses regarding Nearmap's Roof Geometry tool, which EagleView identified as an accused product in its July 2022 supplement to its initial infringement contentions.[57] In its opposition, Nearmap represented it had provided all responsive documents and information and argued this issue was moot.[58] But at the hearing, EagleView asserted that Nearmap continued to supplement its responses and productions on this topic in the days leading up to the hearing. EagleView indicated it had not had an adequate opportunity to review the supplemental productions and could not stipulate that the issue was moot. Nearmap asserted this supplementation was in response to communications from EagleView identifying specific deficiencies. Nearmap maintained it was not intentionally withholding responsive information or documents and was willing to work with EagleView to remedy any further deficiencies.

EagleView's motion is denied without prejudice with respect to discovery regarding the Roof Geometry tool. In light of Nearmap's continued supplementation, it is unclear whether a dispute remains regarding the adequacy of Nearmap's responses on this topic. If, after reviewing

---

[57] (*See* Mot. 3, Doc. No. 111; Ex. A to Mot., Doc. No. 113-1 at 4 (sealed).)

[58] (*See* Opp'n 1–2, Doc. No. 114.)

12

Nearmap's supplemental responses from before (or after) the hearing, EagleView contends Nearmap's responses are deficient, EagleView may file a new motion.

CONCLUSION

EagleView's motion to compel is denied. EagleView's request to compel discovery responses regarding unidentified products with similar functionality to the accused products identified in EagleView's infringement contentions is denied. EagleView's motion is denied without prejudice with respect to discovery regarding the Roof Geometry tool.

DATED this 18th day of May, 2023.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge