IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAGLEVIEW TECHNOLOGIES, INC. et al., | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| NEARMAP US, INC., | Case No. 2:21-CV-283-TS-DAO |
| Defendant. | District Judge Ted Stewart |

This matter is before the Court on Defendant Nearmap U.S., Inc.'s Motion to Dismiss Based on Unpatentability.[1] For the reasons described below, the Court will deny the motion.

## I.  BACKGROUND[2]

Plaintiff EagleView Technologies, Inc. ("EagleView") was the earliest provider of remote aerial roof measurement services. Before EagleView's inventions, repairing or replacing a roof required an onsite visit to determine the style of roof, take measurements, and inspect the area for access and cleanup before preparing a written estimate. EagleView's patents describe methods for estimating roofs without manual measurement and other related technologies. A wide range of customers in construction, insurance, solar energy, and other industries use EagleView's technologies to estimate roofing costs. Defendant Nearmap US, Inc. ("Nearmap")

---

[1] Docket No. 284.

[2] The relevant facts in the amended complaint are taken as true for purposes of this motion.

1

provides aerial imagery and geospatial tools, directly competing with EagleView in the construction, insurance, and solar markets.

EagleView's amended complaint alleges that Nearmap infringes on certain patents owned by EagleView. Nearmap now moves to invalidate U.S. Patent No. 10,671,648 ("the '648 Patent") as an unpatentable "abstract idea" and thereby dismiss Count 13 of Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(6).[3]

Claim 1 of the '648 Patent represents the patent as follows:

**A method, comprising:**

**storing a plurality of data items in a data aggregation system, each of the plurality of data items being associated with one or more geographic location identifiers of a particular geographic point on earth, wherein at least a portion of the plurality of data items stored in the data aggregation system are further associated with one or more time identifiers including one or more time or time periods, indicative of a time history of an associated data item regarding the associated geographic point on earth;**

**receiving, by at least one processor, a query regarding a geographic location and including time information;**

**retrieving, from the data aggregation system, data items having associated geographic location identifiers matching the received geographic location and having associated time identifiers matching the received time information; and**

**outputting the retrieved data items.[4]**

## II. STANDARD OF REVIEW

As an initial matter, EagleView argues that Nearmap's Motion is, in essence, a motion to reconsider and should be denied as such. On March 14, 2023, the Court issued an order in which

---

[3] Docket No. 284.

[4] Docket No. 274-34, at 19.

it granted in part EagleView's motion for leave to file an amended complaint.[5] In that order, the Court rejected Nearmap's argument that amendment of the complaint, including the addition of Count 13, would be futile. This decision required the Court to consider whether that amendment would survive a motion to dismiss.[6] However, in considering a motion to amend, the Court is directed that "leave to amend should be freely given" and proposed amendments must be clearly futile to be excluded under a futility basis.[7] A motion to dismiss is not viewed under such a liberal standard and, accordingly, the Court does not consider Nearmap's Motion as a request to reconsider.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[8] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[9] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor

---

[5] Docket No. 267.

[6] *See Massey v. United States Dep't of the Interior*, No. 2:16-CV-43-TC, 2016 WL 3661234, at *2 (D. Utah July 5, 2016) (unpublished) ("'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive' . . . a motion to dismiss.") (quoting *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001)).

[7] *See* Fed. R. Civ. P. 15(a)(2); *see also Adam v. Kan. Wesleyan Univ.*, No. 95-1473-JTM, 1996 WL 148574, at *1 (D. Kan. Mar. 5, 1996) (unpublished) ("[T]he court may deny a motion to amend when the desired change 'clearly is frivolous or advances a claim that is legally insufficient on its face, but if a proposed amendment is not clearly futile, then denial of leave to amend is improper.'") (quoting 6 Wright, Miller & Kane, Fed. Prac. &  Pro.: Civ. 2d, § 1487 at 637 (2d ed. 1990)); *Gentry v. Chubb*, No. CV 21-13744 (MAS), 2022 WL 5242298, at *5 (D.N.J. Oct. 6, 2022) (unpublished) ("Importantly, however, futility arguments differ from 12(b)(6) dismissal arguments in that when considering futility, courts place a heavy burden on opponents who wish to declare a proposed amendment futile.") (internal quotation marks and citation omitted).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[10] "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] In making this determination, the court accepts all well-pleaded factual allegations and views the complaint in the light most favorable to the non-moving party.[12]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[13] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[14] The court may also consider other "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[15]

The Federal Circuit has emphasized that subject matter eligibility under § 101 is a question of law based on underlying facts that may be decided on a Rule 12(b)(6) motion where there are no facts which, taken in the light most favorable to the plaintiff, prevent resolving the question as a matter of law.[16] A patent is presumed to be valid, and each claim of a patent is presumed to be valid independently of the validity of other claims.[17] "The burden of establishing

---

[10] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[11] *Id.* at 679 (internal citations and quotation marks omitted).

[12] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[13] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[14] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[15] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[16] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

[17] 35 U.S.C. § 282(a).

invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."[18] Nearmap, as the party asserting invalidity, must overcome the presumption of validity by clear and convincing evidence.[19]

## III.  DISCUSSION

Under § 101 of the Patent Act, patent-eligible subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[20] The Supreme Court has interpreted this statement as containing implicit exceptions: "'Laws of nature, natural phenomena, and abstract ideas are not patentable.'"[21] The primary concern of these exemptions is preemption: claims that are "not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work'" are ineligible for patent protection.[22]

In *Alice*, the Supreme Court articulated a two-step test for identifying non-patentable subject matter.[23] At step one, the court asks whether the patent claims are "directed to" an ineligible concept, such as an abstract idea, a law of nature, or a natural phenomenon.[24] If not, the inquiry ends. If so, the court moves to step two and asks whether the claims nevertheless

---

[18] *Id.*

[19] *See Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002).

[20] 35 U.S.C. § 101.

[21] *Alice Corp. Pty. Ltd. v. SLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

[22] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 216).

[23] *Alice*, 573 U.S. 217–18.

[24] *Id.* at 217.

contain an "'inventive concept'" that is "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"[25]

Regarding the first step, determining what a patent is "directed to" is not an exact science.[26] A court must assess a claim's "character as a whole" "in light of the specification"[27] to determine its "focus"[28] or "'basic thrust,'"[29] but without oversimplifying claims or describing them "[at] a high level of abstraction and untethered from the language of the claims."[30]

Nearmap argues that the '648 Patent describes methods for storing, receiving, retrieving, and outputting certain types of data, without the use of any assertively inventive technology and is, accordingly, directed to nothing more than an abstract idea.[31] Eagleview, in opposition, argues

---

[25] *Id.* at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, at 72–73) (2012)).

[26] *See generally Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1376–79 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part) (discussing the difficulties in determining what a patent is "directed to" under Supreme Court and Federal Circuit precedent).

[27] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

[28] *Id.* at 1336.

[29] *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1150 (Fed. Cir. 2016) (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016)).

[30] *Enfish*, 822 F.3d at 1337; *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294–96 (Fed. Cir. 2020) (rejecting characterization of claim as directed to abstract idea where arriving at that characterization required disregarding important elements of the claims); *McRO*, 837 F.3d at 1313 ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.") (internal quotation marks and citation omitted); *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1344 (Fed. Cir. 2013) (*"*[A]ny claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims."), *vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 573 U.S. 942 (2014).

[31] Docket No. 284, at 1.

that when "[p]roperly analyzed, the claims of the '648 patent require components that 'operate in an unconventional manner to achieve an improvement in computer functionality' and therefore . . . are not directed to an abstract idea."[32]

It is well established that, without more, claims describing methods of data storage, recognition, compilation, analysis, monitoring, and retrieval, are directed to abstract ideas under *Alice*.[33] The Court must then determine if the claims of the '648 Patent go beyond abstract data processes and, instead, "focus[] on improved ways in which systems store and access data."[34] Several decisions from the Federal Circuit are helpful in illustrating this distinction.

In *Enfish, LLC v. Microsoft Corporation*, the Federal Circuit analyzed patents describing a "data storage and retrieval system for a computer memory,"[35] which utilized "a flexible, self-referential table."[36] The district court had invalidated the patent after concluding that the claims at issue "were directed to the abstract idea of storing, organizing, and retrieving memory in a logical table."[37] The circuit court reversed, finding that the claims were "not simply directed to *any* form of storing tabular data," but instead were "directed to an improvement of an existing

---

[32] Docket No. 297, at 1 (quoting *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–1301 (Fed. Cir. 2016)).

[33] *See e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1353 (Fed. Cir. 2014) (upholding district court's dismissal of claims "drawn to the abstract idea of (1) collecting data, (2) recognizing certain data within the collected data set, and (3) storing that recognized data in a memory"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (finding the claims at issue clearly focused on an abstract where "[t]he focus of the asserted claims . . . [was] on collecting information, analyzing it, and displaying certain results of the collection and analysis").

[34] *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).

[35] 822 F.3d at 1336.

[36] *Id.* at 1337.

[37] *Id.* (internal quotation marks omitted).

technology," which "improv[ed] upon prior art information search and retrieval systems."[38] The system described by the claims achieved "benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."[39]

In *BSG Tech LLC v. Buyseasons, Inc.*, the Federal Circuit analyzed claims that described a method of indexing items into "a database structure that is capable of storing information about items as combinations of classifications, parameters, and values."[40] The patent holder explained that these claims "allow[] users to quickly and efficiently access hundreds of thousands or even millions of records, and still find only those few records that are relevant."[41] Distinguishing the claims from those in in *Enfish*, the circuit court concluded the claims did "not recite any improvement to the way in which . . . databases store or organize information analogous to the self-referential table in *Enfish*," but instead "perform[] an abstract idea in conjunction with a well-known database structure."[42]

In *In re TLI Communications LLC Patent. Litigation*,[43] the Federal Circuit considered claims that described "manually or automatically assigning classification data, such as a date or timestamp, to digital images and sending those images to a server. The server then extracts the classification data and stores the digital images, taking into consideration the classification information."[44] In asking "whether the claims [were] directed to an improvement to computer

---

[38] *Id.*

[39] *Id.*

[40] 899 F.3d at 1289.

[41] *Id.* at 1288 (citation omitted).

[42] *Id.*

[43] 823 F.3d 607 (Fed. Cir. 2016).

[44] *Id.* at 610 (internal quotation marks omitted).

functionality versus being directed to an abstract idea," as directed in *Enfish*, the court found it significant that the claims were "not directed to a solution to a 'technological problem.'"[45]

> [T]he problem facing the inventor was not how to combine a camera with a cellular telephone, how to transmit images via a cellular network, or even how to append classification information to that data. Nor was the problem related to the structure of the server that stores the organized digital images. Rather, the inventor sought to provid[e] for recording, administration and archiving of digital images simply, fast and in such way that the information therefore may be easily tracked.[46]

The court then concluded that, "like . . . claims directed to 'collecting data,' 'recognizing certain data within the collected data set,' and 'storing the recognized data in memory,' attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner is a well-established 'basic concept' sufficient to fall under *Alice* step 1."[47]

EagleView argues that the claims of the '648 Patent are analogous to the claims at issue in *Enfish* in that it "criticizes conventional ways of storing property records and claims an improved data structure and database that organizes information in a specific, unconventional manner that provides a 'time history' data associated with a geographic point on earth."[48] Eagleview further argues that "[b]ecause the claims of the '648 patent, like those in *Enfish*, are directed towards an improvement to computer functionality itself, reciting a specific database structure, they are not directed towards an abstract idea."[49] However, contrary to EagleView's assertions, the '648 Patent fails to include any claims that describe a specific *technology.*

---

[45] *Id.* at 612–13.

[46] *Id.* at 12 (internal quotation marks omitted).

[47] *Id.*

[48] Docket No. 297, at 9.

[49] *Id.* at 10.

EagleView describes the claims in '648 Patent as follows:

[I]ndependent claims 1, 12, and 18 of the '648 patent require that data be aggregated according to time periods such that data items include "time identifiers" that are "indicative of a time history." Each independent claim then requires that such data be retrievable by a user query that incorporates both time information and a geographic location. Independent claims 9 and 12 separately require that data be retrieved pursuant to both the geographic location and an indication of a time history entered by the user. Unlike in the prior art systems described by the '648 patent, including prior art computer-based systems such as "Zillow" and "Google Maps" . . . , the information returned by the system of the '648 patent will not be out of date, and all available information will be returned, regardless of changes in how locations are identified in various property-related records.[50]

While EagleView concludes that this amounts to a technological advancement, the language of the claims itself does not support this conclusion. The claims describe "storing a plurality of data items in a data aggregation system;" associating the data items with "one or more time identifiers" and "the associated geographic point on earth;" and "receiving . . . a query," among other things. Storing, aggregating, associating, and producing data is simply "a combination of . . . abstract-idea processes."[51] While these claims describe a process likely to improve the ease and efficiency by which a specific type of data can be accessed, they do not include any description by which the court could plausibly conclude that they do so by some advancement in technology.[52]

---

[50] *Id.* at 2 (internal quotation marks and citations omitted).

[51] *Elec. Power Grp., LLC*, 830 F.3d at 1351, 1354 (analyzing patents that "describe[d] and claim[ed] systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results," and concluding that the claims were "clearly focused on the combination of . . . abstract-idea processes").

[52] *See Smart Sys. Innovations, LLC.*, 873 F.3d at 1373 (rejecting argument at *Alice* step one that an abstract idea providing "speedier solutions" enables a claim to fall outside "the abstract ideas realm"); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) ("The fact that an identifier can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract.").

Further, similar to *In Re TLI Communications*, the problem the claims at issue seek to address is not a technological problem. EagleView explains that, "[t]raditionally, property attributes such as title information, geographic characteristics, insurance policies, and building and utility information were stored in different locations, and data was tracked based on different identifiers such as parcels, lots, townships, cities, zip codes, and school districts."[53] Such information "is usually [publicly] available, but is stored by different entities in different locations using different formats."[54] "This conventional approach presented several drawbacks, including that identifiers could change such that they represent different points on the earth at different times" and the '648 Patent' "solves these problems."[55]

As alleged by EagleView, the data aggregated and produced by the claims is available by requesting such data from various entities. Like the claims at issue in *In Re TLI Communications*, the claims here seek to produce the relevant data at issue "simply, fast and in such way that the information . . . may be easily tracked."[56] This is insufficient to demonstrate that the claims at issue address a technological problem and, instead, supports that the claims at issue are directed to an abstract at idea.

Based on the above analysis, the Court must move to the second step under *Alice*. The second step "requires [the Court] to determine whether the claim elements, when viewed individually and as an ordered combination, contain 'an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.'"[57] "A claim contains an inventive

---

[53] Docket No. 297, at 2

[54] *Id.* at 7.

[55] *Id.* at 2.

[56] 823 F.3d at 612.

[57] *Smart Sys. Innovations, LLC.*, 873 F.3d at 1373–74 (quoting *Alice*, 572 U.S. at 221).

concept if it 'includes additional features' that are more than 'well-understood, routine, conventional activities.'"[58] "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."[59]

"Whether a claim limitation or combination of limitations is well-understood, routine, and conventional is a factual question. Accordingly, in cases where the only issue at step two is whether claim limitations are well-understood, routine, and conventional, a genuine dispute over that issue will preclude" dismissal for ineligibility under 12(b)(6).[60]

EagleView argues that the claims of the '648 Patent are inventive: "Specifically, the system claimed by the '648 Patent can provided a time history of a particular geographic point on earth."[61] "[B]y associating information with one or more geocoded locations on earth, information can be accurately obtained concerning a particular geographic area over any time period."[62] "Moreover, information about a parcel, or even multiple parcels over time associated with the same point, can be aggregated into a single system to be queried."[63]

Considering the record currently before the Court and the presumption of validity, the Court finds that Nearmap has not met its burden to show by clear and convincing evidence that the claims of the '648 Patent lack an inventive concept. Accordingly, the Court will deny Nearmap's Motion without prejudice.

---

[58] *Id.* at 1374 (quoting *Alice*, 572 U.S. at 221).

[59] *BSG Tech LLC*, 899 F.3d at 1290–91.

[60] *Id.* at 1290.

[61] Docket 297, at 10.

[62] *Id.* at 11.

[63] *Id.*

IV. CONCLUSION

It is therefore

ORDERED that Nearmap's Motion to Dismiss (Docket No. 284) is denied without

prejudice.

DATED this 28th day of March, 2024.

BY THE COURT:

_____
Ted Stewart
United States District Judge